**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FREDY EDUARDO MARTINEZ-SANTOS,** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Petitioner*, | | |
| v. | | |
| **MARKWAYNE MULLIN,** Secretary of the United States Department of Homeland Security; **UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS,** Acting Director of Immigration and Customs Enforcement; **TODD BLANCHE,** Acting Attorney General of the United States; **MARY DE ANDA-YBARRA,** Director of the El Paso Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; **IMMIGRATION AND CUSTOMS ENFORCEMENT;** *and* **WARDEN,** ERO El Paso Camp East Montana, | | **EP-25-CV-00655-DCG** |
| *Respondents*. | | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Fredy Eduardo Martinez-Santos ("Petitioner") challenges his ongoing

detention by United States Immigration and Customs Enforcement ("ICE") and seeks a writ of

habeas corpus under 28 U.S.C. § 2241.[1] Federal Respondents ("Respondents") oppose the Petition.[2]

For the following reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART** and **ORDERS** Respondents to either give Petitioner a bond hearing or release Petitioner from custody.

## I.    Background

### A.    Factual History

Petitioner is a citizen of Honduras who, as a minor, entered the United States without inspection in 2022.[3] In 2023, the Government issued a Notice to Appear ("NTA") charging Petitioner as "an alien present in the United States who has not been admitted or paroled" and thus subject to removal.[4] On September 14, 2025, immigration authorities detained Petitioner while he was working.[5] At that time, Petitioner lived with his mother and younger siblings.[6]

Petitioner has remained in custody since September 14, 2025, and is currently detained at Camp East Montana in El Paso, Texas.[7] As far as the record reveals, the Government has neither

---

[1] *See generally* Pet., ECF No. 1.

[2] *See generally* Resp., ECF No. 4.

[3] Pet. at 13–14; Resp. at 1.

[4] *See* NTA, ECF No. 4-1, at 1.

An NTA is a charging document that "initiates a proceeding before an Immigration Judge." *See* 8 U.S.C. § 1003.13; *id.* § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

[5] Pet. at 15; Resp. at 1.

[6] Pet. at 15.

[7] *Id.* at 11.

(1) given Petitioner a bond hearing; nor (2) entered a final administrative order of removal against Petitioner.[8]

**B.      Procedural History**

On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in accordance with 28 U.S.C. § 2241.[9] Petitioner claims that his ongoing detention violates the Immigration and Nationality Act ("INA") and its corresponding regulations, as well as the Fifth Amendment to the United States Constitution.[10] He asks the Court to, *inter alia*: (1) assume jurisdiction; (2) order Respondents to release Petitioner or provide him a bond hearing; (3) issue declaratory judgment; and (4) award attorney's costs and fees.[11]

---

[8] In accordance with the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the parties were required to tell the Court if and when (1) "the Government grants the petitioner a custody redetermination hearing" and (2) "the Government issues an order of removal against the petitioner." A copy of that Standing Order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2026/04/Standing-Order-Immigration-Case-Updates-DCG.pdf.

Neither party has filed a status update containing that information, so the Court proceeds under the assumption that (1) no final order of removal exists; and (2) Petitioner has not received a bond hearing.

[9] Pet. at 74.

[10] *Id.* at 72–73.

[11] *Id.* at 73–74.

Respondents maintain that (1) the INA requires Petitioner's "mandatory detention" without the opportunity for bond; and (2) Petitioner has no valid basis to challenge his ongoing detention under the Fifth Amendment.[12]

## II. Legal Standard

The United States Constitution guarantees that, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[13] Detainees bear the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[14]

Under 28 U.S.C. § 2243, the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require."[15] Because "the facts essential to consideration of the constitutional issue are already before the court," it is unnecessary to hold an evidentiary hearing to decide the Petition; the Court may instead decide the Petition on the papers.[16]

---

[12] Resp. at 2–8.

[13] *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).

[14] *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," with exceptions not relevant here, "he is in custody in violation of the Constitution or laws or treaties of the United States." (citation modified)).

Because habeas proceedings are civil in nature, each petitioner "must satisfy his burden of proof by a preponderance of the evidence." *See, e.g.*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[15] *See* 28 U.S.C. § 2243.

[16] *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

### III.    Discussion

#### A.    Jurisdiction

The Court must determine whether it has subject matter jurisdiction.[17] Congress has

divested district courts of jurisdiction to adjudicate certain immigration-related claims that might

otherwise be cognizable under 28 U.S.C. § 2241.[18] To that end, Respondents argue that the INA

prevents the Court from hearing Petitioner's claims.[19] The Court has already considered and

rejected Respondents' arguments in prior cases.[20] For those same reasons, the Court retains

jurisdiction over this Petition.

#### B.    Immigration and Nationality Act

The parties dispute whether Petitioner is eligible for a bond hearing under the INA.[21] The

Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi* appears to foreclose the possibility

that Petitioner is detained under 8 U.S.C. § 1226(a) (and thus *eligible* for a bond hearing). There,

---

[17] *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.").

[18] *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Bouarfa v. Mayorkas*, 604 U.S. 6, 18 (2024).

[19] *See* Resp. at 5–6.

[20] *See, e.g.*, *Alvarado Luna v. Warden*, 3:25-CV-00565-DCG, 2025 WL 3787494, at *6–7 (W.D. Tex. Dec. 29, 2025), *overruled in part by Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Zamudio Sanchez v. Noem*, No. 3:25-CV-00403-DCG, 2026 WL 596133, at *6–7 (W.D. Tex. Mar. 2, 2026); *Gomes v. Grant*, No. 3:25-CV-00663-DCG, 2026 WL 1179617, at *2 (W.D. Tex. Apr. 21, 2026); Memorandum Opinion and Order Granting Petition for Writ of Habeas Corpus, *Goliakov v. Noem*, No. 3:25-CV-00613 (W.D. Tex. May 1, 2026), ECF No. 16.

[21] *Contrast* Pet. at 71–72 *with* Resp. at 2.

*See, e.g.*, *Louisiana v. Pub. Invs., Inc.*, 35 F.3d 216, 219–20 (5th Cir. 1994) ("When presented with two grounds for resolving a case, one statutory and the other constitutional in nature, we will address the statutory ground first and dispose of the case solely on that basis if possible.").

the Fifth Circuit suggested that the Government could apply either § 1225 or § 1226 to certain

"aliens in the United States."[22] Assuming (without deciding) that the Government had discretion

to detain Petitioner under either authority, nothing suggests that the Government detained him

under § 1226 in September 2025.[23]

Accordingly, the appropriate detention authority must be § 1225(b)(1) or § 1225(b)(2).[24]

It is unnecessary to decide which paragraph applies, because neither one provides the

---

[22] *Buenrostro-Mendez*, 166 F.4th at 505 ("It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens.").

[23] *See id.* at 498–508; NTA at 2.

Although Petitioner maintains that he was previously "released specifically under the authority of 8 U.S.C. § 1226," he offers no evidence to prove that. Suppl. Br., ECF No. 6, at 4. Thus, the Court does not address Petitioner's arguments that § 1225(b) cannot be applied retroactively to his detention. *Id.* at 10–15.

[24] Both paragraphs direct the Government to detain an applicant for admission "throughout the completion of applicable proceedings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

A noncitizen is an applicant for admission if he (1) is present in the United States but has not been admitted; or (2) arrives in the United States. *See* 8 U.S.C. § 1225(a)(1). *See also id.* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); *id.* § 1182(d)(5)(A) (explaining that "parole of such alien *shall not* be regarded as an admission of the alien" (emphasis added)).

Petitioner is an applicant for admission because he is present in the United States but has not been admitted. *Cf.* Resp. at 3 ("Given the plain language of § 1225(a)(1), Petitioner cannot plausibly argue that he is not an applicant for admission.").

opportunity for a bond hearing.[25] The Court therefore denies Petitioner's statutory and related administrative claims.[26]

Because "the Constitution, not statutes, determine the minimum procedures that due process requires,"[27] *Buenrostro-Mendez* does not control whether Respondents are detaining Petitioner in violation of the Constitution.[28] Thus, Petitioner could still obtain a bond hearing if the Constitution requires the Government to provide one.

### C.      Due Process Clause of the Fifth Amendment

Petitioner argues that the Government has violated the Due Process Clause of the Fifth Amendment by detaining him without the opportunity for a bond hearing.[29] Under these circumstances, the Court agrees. Petitioner is entitled to relief on *procedural* due process

---

[25] Neither paragraph "says anything whatsoever about bond hearings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297). Thus, the Fifth Circuit concluded that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." *Id.* at 500.

[26] *See* Pet. at 71–72, 73.

[27] *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020) ("[T]he Constitution, not statutes, determine the minimum procedures that due process requires.").

[28] *See, e.g.*, *Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026) ("*Buenrostro-Mendez* has no bearing on this Court's determination of whether a habeas petitioner is being detained in violation of her constitutional right to procedural due process." (citation modified)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee." (citation modified));

[29] *See* Pet. at 72–73.

grounds, so the Court need not analyze whether he would also be entitled to relief on *substantive*

due process grounds.[30]

### 1.    Procedural Due Process

In *Mathews v. Eldridge*, the Supreme Court articulated a three-part balancing test to

determine whether a procedural due process violation has occurred.[31] The factors are as follows:

1) "The *private interest* that will be affected by the official action";

2) "The *risk* of an erroneous deprivation of such interest through the procedures used, and the *probable value*, if any, of additional or substitute procedural safeguards"; and

3) "The *Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[32]

The Supreme Court distilled these factors from its previous decisions, which "indicate that

identification of the specific dictates of due process generally requires consideration of three

---

[30] The Due Process Clause includes two distinct protections, and each provides an independent basis to challenge detention as unconstitutional. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("This Court has held that the Due Process Clause protects individuals against two types of government action."); *Cleveland Bd. of Educ.*, 470 U.S. at 541 ("The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology.").

*Substantive* due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746 (first quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); and then quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)).

*Procedural* due process is "meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *AARP v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (citation modified)). Even if "government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[31] *Mathews*, 424 U.S. at 334–35.

[32] *Id.* at 335 (emphases added).

distinct factors."[33] Thus, district courts have broadly relied on the *Mathews* factors to evaluate procedural due process challenges to pre-removal-order detention.[34]

In this case, the *Mathews* factors weigh in favor of Petitioner:

1) Petitioner possesses a cognizable interest in his physical freedom because he lived at liberty in the United States for more than two years and has family and community ties to the country;[35]

2) A bond hearing would mitigate "the risk of an erroneous deprivation of [Petitioner's liberty] interest;"[36] and

---

[33] *Id.* at 334–35.

Although *Mathews* involved a challenge to the deprivation of property, the Supreme Court later clarified that the three-part test can be applied in challenges to the deprivation of life and liberty. *See id.* at 323 (involving challenge to termination of disability benefits); *see also Hamdi*, 542 U.S. at 528–29 (explaining that the Court uses "the test that [it] articulated in *Mathews*" for "determining the procedures that are necessary to ensure that a citizen is not deprived of life, liberty, or property, without due process of law" (citation modified)).

[34] *See, e.g.*, *Zamudio Sanchez*, 2026 WL 596133, at *11 n.116 (collecting cases).

In earlier cases, this Court explained why the *Mathews* factors remain applicable in the immigration detention context even though the Supreme Court did not expressly apply those factors in several of its immigration detention opinions. *See id.* at *12; *Gomes* 2026 WL 1179617, at *6–7. The Court adheres to its prior conclusion that the *Mathews* factors provide the appropriate legal framework for analyzing Petitioner's due process challenge.

[35] *See* Pet. at 14–15 ("Mr. Martinez-Santos recently graduated high school . . . . While his mother works during the day, Mr. Martinez-Santos takes care of his younger siblings."); Resp. at 1–2.

*Cf., e.g.*, *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (explaining that civil detainees possess a "substantial liberty interest in not being confined unnecessarily"); *Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 700 (W.D. Tex. 2025) (identifying liberty interest in noncitizen who lived in the country for approximately three years); *Saley v. Scott*, No. 2:26-CV-00797, 2026 WL 914810, at *4 (W.D. Wash. Apr. 3, 2026) (deeming petitioner's "family ties" pertinent to the first *Mathews* factor).

[36] *Mathews*, 424 U.S. at 335; *see also, e.g.*, *Black v. Almodovar*, 156 F.4th 171, 194 (2d Cir. 2025) ("In the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention." (citation modified)); *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States*, 463 U.S. 354, 368 (1983))).

3) The burden of administering such a hearing would infringe minimally on the Government's interest in using detention to effectuate removal proceedings.[37]

The Court therefore finds that, by detaining Petitioner without the opportunity for a bond hearing, Respondents have deprived Petitioner of his right to procedural due process under the Fifth Amendment.

### D.      Relief

#### 1.      Bond Hearing or Release

Petitioner requests immediate release from custody or a bond hearing.[38] The majority of courts appear to require a bond hearing before an immigration judge ("IJ") for immigration detainees who have been detained in violation of due process.[39] "[G]iven that the Court has found a *procedural* due process violation,"[40] the Court agrees that a bond hearing is an appropriate remedy.[41] That said, the Court will order that a bond hearing be completed within a

---

[37] *Compare Singh v. Andrews*, No. 25-CV-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."), *with Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day").

[38] Pet. at 73.

[39] *See, e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (collecting cases).

[40] *See id.* at 687.

[41] *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775))

short window.[42] If Respondents do not provide the individualized hearing as required by this

Order, they must release Petitioner under reasonable conditions of supervision.[43]

### 2. Attorney's Fees

Petitioner also requests costs and attorney's fees.[44] To recover fees against the

Government, Petitioner must demonstrate that the Government waived its sovereign immunity.[45]

Under the Equal Access to Justice Act ("EAJA"), attorney's fees "are not available in habeas

corpus proceedings like this one."[46] The Court therefore denies this request.

### 3. Declaratory Relief

Petitioner finally asks the Court to declare that noncitizens "are entitled to a bond hearing

before a neutral adjudicator" if they (1) have entered the country without inspection; (2) are later

"encountered in the interior long after their entry" into the country; (3) are placed in removal

proceedings; and (4) are not otherwise described in 8 U.S.C. § 1226(c) or 8 C.F.R. §

1003.19(h)(2).[47] Setting aside the definitional question of what amount of time would be "long"

---

[42] *Cf. Velasquez Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025).

[43] *See* 8 U.S.C. § 1231(a)(3) (requiring that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

[44] Pet. at 74.

[45] *See Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023) ("Any waiver of the United States' sovereign immunity must be express, unequivocal, and any ambiguity therein strictly construed in favor of the sovereign.").

[46] See *Pineda v. Noem*, No. SA-25-CV-01518-XR, 2025 WL 3471418, at *6 (W.D. Tex. Dec. 2, 2025) (citing *Barco*, 65 F.4th at 785).

[47] Pet. at 74.

enough "after [one's] entry,"[48] the Court reiterates that Petitioner is only entitled to a bond hearing under the Constitution.[49] "Due Process is flexible" and "calls for such procedural protections as the particular situation demands."[50] Because the Court restricts its holding to the particularized facts of this case, it denies this request.

## IV.    Conclusion

For these reasons, the Court determines that (1) it has jurisdiction over this matter; and (2) Petitioner has established a violation of the Due Process Clause of the Fifth Amendment as applied to him.

The Court therefore **GRANTS** Petitioner Fredy Eduardo Martinez-Santos's "Petition for Writ of Habeas Corpus" (ECF No. 1) **IN PART**.

The Court **ORDERS** Respondents to, by **Wednesday, May 13, 2026**:

1) provide Petitioner with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk justifying Petitioner's continued detention;[51] or

2) release Petitioner from custody under reasonable conditions of supervision.

The Court further **ORDERS** Respondents to **NOTIFY** Petitioner and Petitioner's counsel **at least 24 hours** before the hearing or release (including the date, time, and location).

---

[48] *Id.*

[49] *See supra* notes 24–30 and accompanying text.

[50] *Jennings*, 583 U.S. at 314 (citation modified).

[51] To secure their release at a bond hearing, noncitizens typically bear the burden of demonstrating that they are neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8); *id.* § 1003.19(h)(3).

Where bond hearings are ordered as a habeas remedy, however, the burden shifts to the Government to show, by clear and convincing evidence, that the detainee poses a danger or flight risk. *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (citing *Velasco Lopez*, 978 F.3d 842, 855 (2d Cir. 2020)).

The Court further **ORDERS** Respondents to **FILE** an advisory with the Court **no later than Monday, May 18, 2026**, containing (1) detailed reasons for the bond hearing decision; or (2) confirmation of Petitioner's release.

In the event Petitioner is released, the Court **ORDERS** Respondents to **RETURN** Petitioner's property to him (including identification, immigration papers, cell phone, money, keys, and any other personal effects).

The Court respectfully **DIRECTS** the Clerk of Court to **SUBSTITUTE** Acting Attorney General Todd Blanche in Former Attorney General Pamela Bondi's place as a Respondent.[52]

**So ORDERED and SIGNED this 6th day of May 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[52] *Compare* Pet. at 14 (naming Former Attorney General Pamela Bondi in her official capacity), *with* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").